**Q.C. CONSTRUCTION COMPANY, INC., Nicholas Cambio and Frank Paolino**

v.

**Albert VERRENGIA, in his capacity as Director of Finance of the Town of Johnston.**

Civ. A. No. 87–0470L.

United States District Court, Rhode Island.

Nov. 30, 1988.

Michael A. Kelly and Patricia Rocha, Adler Pollock and Sheehan, Providence, R.I., for plaintiffs.

William Connell and Richard Tallo, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), and also his motion for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant is Director of Finance of the Town of Johnston, Rhode Island and is being sued in his official capacity.

Plaintiffs Q.C. Construction Company, Inc., Nicholas Cambio and Frank Paolino instituted this action in an attempt to recover compensation for a temporary taking by regulation of their property by the Town of Johnston. In a prior, 1986 decision, this Court held that a Johnston Town Council resolution which imposed a moratorium on the issuance of building permits and thereby prohibited plaintiffs from developing their property constituted a deprivation of property rights without due process of law. *Q.C. Construction Co., Inc.*

*v. Gallo,* 649 F.Supp. 1331 (D.R.I.1986) (hereinafter *"Q.C.I"*).[1] Such governmental action is often referred to as a "taking by regulation" or "inverse condemnation." Specifically, this Court held that the Town of Johnston had violated plaintiffs' right to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution. *Id.* at 1338. Therefore, this Court invalidated the moratorium resolution.

In 1987, the United States Supreme Court held that a temporary taking of property by regulation without just compensation violates the takings clause of the Fifth Amendment to the United States Constitution and the owner thereof must be properly compensated. *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250. As a result of that ruling, plaintiffs filed the present action in an effort to force "the Town of Johnston to pay them just compensation in the amount of $300,000 as a result of the temporary taking" that occurred during the period that the moratorium was in effect. Plaintiffs' Complaint at 5. The Town of Johnston responded that plaintiffs' action is premature since they have not yet been denied compensation through the auspices of the State of Rhode Island.

■ This Court agrees that plaintiffs' action is premature. Under Supreme Court precedent, a federal action for an unconstitutional taking of property without just compensation does not lie until the state has denied just compensation or the plaintiff demonstrates that no means of obtaining compensation exists. It is not the taking of property that is unconstitutional; what is unconstitutional is the taking of property without just compensation. In the instant case, plaintiffs have not been denied compensation under state law by the Rhode Island courts, nor have they shown that a procedure for seeking compensation does not exist. To the contrary, Rhode Island precedent indicates that a means of pursuing compensation is available in state court. Therefore, defendant's motion to dismiss must be granted. For this reason, the Court need not reach defendant's motion for summary judgment.

## BACKGROUND

Nicholas Cambio and Frank Paolino are joint owners of Q.C. Construction Company. Together these three "persons" are the plaintiffs in this action. Plaintiffs are engaged in the business of residential real estate development and construction. In conducting their business, plaintiffs purchase undeveloped land and, after acquiring the necessary permits, they build homes on the land and sell these homes to the public.

In 1983 plaintiffs purchased a number of lots in the town of Johnston for the purpose of residential development. Soon thereafter, plaintiffs obtained building permits for twelve of the sites after filing the necessary documents required by the Johnston Building Code. Plaintiffs intended to develop at least fifteen other lots located in close proximity to the twelve approved lots; however, on July 11, 1983 the Johnston Town Council passed a resolution which imposed a moratorium on the issuance of new building permits in the area where plaintiffs' lots lay. The Town Council was motivated by recurring problems with the public sewer system in the area of plaintiffs' land. The sewer system had been constructed and extended in a hodge-podge, patchwork manner over a number of years by various developers as a condition for the Town's approval of their building plans. As a result, the system frequently clogged and overflowed into surrounding homes. The Town's response, therefore, was to ban the issuance of building permits in the area for homes requiring access to the Town sewer, and thereby prevent new houses from using the faulty waste system.

In response, on April 18, 1985, the plaintiffs in this action filed a separate civil

---

1. No appeal was taken from that decision. Thereafter, this Court made a determination of the costs, including attorneys fees, that were taxable against the defendants. Plaintiffs took an appeal from that decision because they disagreed with the amount taxed, but the First Circuit affirmed in a 1987 unpublished opinion, 836 F.2d 1340.

rights suit against public officials of the Town of Johnston in their official capacities. *Q.C.I*, 649 F.Supp. 1331. Plaintiffs alleged that the moratorium violated their Fifth and Fourteenth Amendment rights. On December 15, 1986 this Court held, "[the] moratorium Resolution enacted by the Johnston Town Council is unconstitutional and thus invalid because it results in the taking of plaintiffs' property without due process of law." *Id.* at 1335.

On January 6, 1987, this Court entered Judgment in plaintiffs' behalf. The Judgment provided: 1) that the moratorium resolution is unconstitutional; 2) that the Johnston Building Inspector, upon application by plaintiffs for the disputed building permits with accompanying plans and other documents that establish compliance with the Johnston Building Code, shall issue such permits; 3) that upon issuance of the building permits the Chairman of the Johnston Sewer Commission shall issue permits allowing plaintiffs to connect their lots to the town sewer lines; and 4) that plaintiffs are entitled to recover their costs of pursuing *Q.C.I* including attorneys fees.

Subsequently, the Town Building Inspector issued permits for some of the lots but balked at issuing permits for the remainder. Therefore, on February 20, 1987 plaintiffs filed a motion to Adjudge in Contempt. This Court treated plaintiffs' motion as a motion to amend judgment. The parties engaged in oral argument before the Court on April 7, 1987. Then, on April 27, 1987, the Court amended the January 6 Judgment to order Frank Gallo, the Johnston Building Inspector, to forthwith issue building permits for the remaining lots. He complied with the Court's order and issued the remaining necessary permits.

On July 23, 1987, plaintiffs notified the Johnston Town Council that they would be seeking just compensation for the temporary taking of their property from February, 1985 to April, 1987 pursuant to Rhode Island General Law § 45–15–5.[2] The Town failed to respond. As a result, plaintiffs filed the instant action on September 15, 1987. Plaintiffs claim that the Town of Johnston owes them "just compensation in the amount of $300,000 as a result of the temporary taking and loss of use of [their land, from the time the moratorium was enacted to the time the permits were issued,] plus attorneys' fees and costs." Plaintiffs' Complaint at 5.

On August 11, 1988, defendant filed a Motion to Dismiss and a Motion for Summary Judgment. He seeks dismissal on the ground that plaintiffs' action is premature, and alternatively seeks summary judgment on the ground that plaintiffs' suit is barred by the doctrine of res judicata. This Court heard oral argument on these motions on September 12, 1988, and took the matter under advisement.

## DISCUSSION

The issue raised by defendant's Motion to Dismiss is whether a plaintiff may bring a federal action seeking just compensation under the takings clause of the Fifth Amendment for a temporary taking of property by regulation when the plaintiff has not sought compensation through available state procedures. Under recent United States Supreme Court precedent, it is clear that a plaintiff must first be denied compensation by the state before he may maintain an action for deprivation of the Fifth Amendment right to compensation. Since plaintiffs have not sought compensation through available Rhode Island state mechanisms, their action is premature and must be dismissed.

In the 1985 case of *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126, the Supreme Court held that an action by a developer under the takings clause of the Fifth Amendment for a taking by regulation was premature. Among other rulings, the Court determined that the complaint in *Williamson* had to be dismissed because the plaintiff had not pursued state compensatory procedures. The Court held that "if

---

**2.** R.I.G.L. § 45–15–5 establishes a procedure for recovering money from a municipality. It is quoted hereinafter.

a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at 3121. The rationale underlying this holding is that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194, 105 S.Ct. at 3120 (citing *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, at 297, n. 40, 101 S.Ct. 2352, at 2371, n. 40, 69 L.Ed.2d 1 (1981)). Based on the above described nature of the Fifth Amendment right to just compensation, the Court ruled:

> Thus, the State's action is not "complete" in the sense of causing a constitutional injury "unless or until the State fails to provide an adequate postdeprivation remedy for the property loss." *Hudson v. Palmer*, 468 U.S. 517, 532, n. 12, [104 S.Ct. 3194, 3203, n. 12, 82 L.Ed.2d 393] (1984). Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not "complete" until the State fails to provide adequate compensation for the taking.

*Id.* 473 U.S. at 195, 105 S.Ct. at 3121 (footnote omitted). In sum, the *Williamson* Court held that since the plaintiff had not used an available state compensation procedure, nor had it shown that such a procedure was unavailable or inadequate, its taking claim was "premature." *Id.* at 197, 105 S.Ct. at 3122.

■ *Williamson* is controlling in the instant case. Since plaintiffs have clearly not exhausted any state compensatory procedure, they must demonstrate that Rhode Island either lacks such a procedure or that it is inadequate. Here, plaintiffs have failed to show that the state would deny them a means of seeking redress. To the contrary, plaintiffs availed themselves of R.I.G.L. § 45–15–5 in order to obtain compensation, but became side-tracked by filing a complaint in federal rather than state court. While Rhode Island law does not explicitly provide a procedure for securing just compensation for a temporary taking of property by regulation, § 45–15–5 establishes a means through which one owed money by a municipality can obtain redress. Obviously, plaintiffs recognized the seeming applicability of this section to their situation.

Section 45–15–5 provides as follows:

> Every person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty (40) days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same.

This section apparently creates a procedure through which a property owner may seek just compensation. *Cf. Mesolella v. City of Providence*, 508 A.2d 661 (R.I.1986) (implying that § 45–15–5 provides a procedure for one injured by an improper zoning ordinance to seek damages).

In fact, plaintiffs relied on § 45–15–5 in presenting a demand for compensation to the Johnston Town Council. However, perhaps due to confusion on their parts, plaintiffs then failed to properly pursue redress in state court. In support of their federal suit, plaintiffs rely on § 45–15–5, stating:

> Plaintiffs notified the Johnston Town Council that they will be seeking just compensation from the Town of Johnston for the temporary taking of their property.... No response was made to the demand by the Town within the required 40 days. Thereafter, Plaintiffs filed the within Complaint pursuant to § 45–15–5.

Plaintiffs' Memorandum In Support of Their Objection to Defendant's Motion to Dismiss at 5.

■ Plaintiffs clearly contend that this action was filed pursuant to R.I.G.L. § 45–15–5. Described another way, plaintiffs maintain that the State of Rhode Island has conferred federal jurisdiction over their claim by promulgating § 45–15–5. Obviously this argument is absurd. A state cannot vest a federal court with jurisdiction over a cause of action. In stating that an aggrieved person may "commence his action" against a town through its treasurer, the statute must refer to a state action. Because plaintiffs have not pursued an action in state court, their federal claim is premature.

Plaintiffs argue that Rhode Island does not provide a means of obtaining just compensation; however, § 45–15–5 plainly permits a state action. Furthermore, the Supreme Court of Rhode Island has unequivocally held that one deprived of property through a taking by regulation is entitled to just compensation. *See Annicelli v. Town of South Kingstown,* 463 A.2d 133 (R.I.1983). In fact, Rhode Island common law has long recognized that regulation may work an unconstitutional deprivation of property. *Milardo v. Coastal Resources Mgmt. Council,* 434 A.2d 266 (R.I. 1981); *Sundlun v. Zoning Board of Review,* 50 R.I. 108, 145 A. 451 (1929).

While it is true that the Supreme Court of Rhode Island has yet to require just compensation for a temporary taking, plaintiffs have failed to show that such compensation is unavailable. In an analogous case that in part concerned the availability of an action for just compensation under Puerto Rican law, the Court of Appeals for the First Circuit dismissed the federal action. *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 513 (1987). The First Circuit held:

> Decisions of the Supreme Court of Puerto Rico indicate that that court will entertain an inverse condemnation action for damages when it believes that property is "taken" by unconstitutionally excessive governmental regulations. While

there is no Puerto Rico statute providing expressly for an inverse condemnation remedy, and, more troubling, there is as yet no case where such damages were actually awarded, discussions in several opinions of Puerto Rico's high court indicate acceptance of an inverse condemnation remedy.

*Id.* The availability of a remedy for taking by regulation is much more certain in the instant case. Moreover, the United States Supreme Court decision in *First English,* issued just months after *Culebras,* makes it even more likely that the state court will entertain an action for the temporary taking of property by regulation.

In *First English,* the United States Supreme Court held that a plaintiff may recover just compensation for a temporary taking of property. *First English,* 107 S.Ct. at 2389. No reason exists to believe that the Rhode Island courts would refuse to follow the United States Supreme Court's constitutional decision. Certainly a denial of just compensation on the ground that temporary takings are not compensable would be constitutionally defective under *First English.*

The procedural posture of *First English* also supports todays holding. In that case, the plaintiff, the alleged victim of an uncompensated taking by regulation, litigated its claim through the California state court system before gaining access to federal courts. *Id.* at 2383. It was only because the *First English* plaintiff had been effectively denied compensation by the highest state court that the Supreme Court reached the takings clause issue on the merits. In addressing the prematurity issue, the Supreme Court observed:

> [O]ne seeking compensation must "seek compensation through the procedures the State has provided for doing so" before the claim is ripe for review.... Having assumed that a taking occurred, the California court's dismissal of the action establishes that "the inverse condemnation procedure is unavailable...." The compensation claim is accordingly ripe for our consideration.

*Id.* at 2384, n. 6 (quoting *Williamson*). Since plaintiffs here have not yet sought compensation in Rhode Island state court, their constitutional takings claim is premature.

## CONCLUSION

Plaintiffs' federal action seeking just compensation for a temporary regulatory taking is premature. The Constitution does not prohibit the taking of private property; it prohibits the taking of private property without just compensation. Since plaintiffs have not yet been denied just compensation under state procedures, their constitutional rights have not been violated and no federal cause of action exists. Therefore, the defendant's Motion To Dismiss is granted.

*It is so Ordered.*